IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:11-CR-11-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| MELVIN FAULKNER, ) | |
| ) | |
| Defendant. ) | |

On November 10, 2020, Melvin Faulkner ("Faulkner" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 87]. On April 6, 2021, through counsel, Faulkner filed a memorandum and documents in support [D.E. 90, 90-1–90-4]. On April 20, 2021, the government responded in opposition [D.E. 94]. On April 27, 2021, Faulkner replied to the government's response [D.E. 95]. As explained below, the court denies Faulkner's motion.

I.

On July 5, 2011, with a written plea agreement, Faulkner pleaded guilty to two counts of use and carry of a firearm during and in relation to a crime of violence (counts two and four). See [D.E. 27, 28]. On October 6, 2011, the court held Faulkner's sentencing hearing and adopted the facts as set forth in the Presentence Investigation Report ("PSR"). See [D.E. 29, 32, 76]. The court determined Faulkner's guideline range to be 84 months' imprisonment on count two and 300 months' consecutive imprisonment on count four. See PSR [D.E. 29] ¶¶ 57–60; [D.E. 76] 1. After

thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Faulkner to 84 months' imprisonment on count two and 300 months' consecutive imprisonment on count four for a total sentence of 384 months' imprisonment. See [D.E. 33]. Faulkner did not appeal.

On February 13, 2015, Faulkner moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. See [D.E. 42]. On June 5, 2015, the government moved to dismiss Faulkner's section 2255 motion. See [D.E. 47]. On July 20, 2015, Faulkner responded in opposition to the government's motion. See [D.E. 55]. On February 29, 2016, the court granted the government's motion to dismiss, dismissed Faulkner's section 2255 motion, and denied a certificate of appealability. See [D.E. 58]. Faulkner did not appeal.

On June 25, 2016, after receiving authorization from the Fourth Circuit [D.E. 62], Faulkner filed a second motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. See [D.E. 65]. On November 4, 2016, the court stayed Faulkner's section 2255 motion pending the United States Court of Appeals for the Fourth Circuit's decisions in United States v. Walker and United States v. Simms. See [D.E. 70]. On August 13, 2019, the court ordered parties to file supplemental briefing regarding Faulkner's section 2255 motion. See [D.E. 73]. On August 26, 2019, the government responded in opposition. See [D.E. 75]. On September 6, 2019, the court dismissed Faulkner's section 2255 motion as successive, and denied a certificate of appealability. See [D.E. 79]. Faulkner appealed. See [D.E. 81]. On January 24, 2020, the Fourth Circuit dismissed Faulkner's appeal and declined to issue a certificate of appealability. See United States v. Faulkner, 791 F. App'x 401, 402 (4th Cir. 2020) (per curiam) (unpublished).

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a

2

sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of

> (A) Medical Condition of the Defendant.—
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,
> >
> > that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

4

sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 2021 WL 1823289, at *3; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Faulkner contends that he requested compassionate release from the warden, which the warden denied on October 21, 2020. See [D.E. 90] 1. The government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Faulkner's claim on the merits.

Faulkner seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Faulkner cites the COVID-19 pandemic, his age (61), his race, his hypertension, and his history of hepatitis C. See [D.E. 87] 1; [D.E. 90] 1–2, 12–13; [D.E. 90-1]; [D.E. 92]. Faulkner also cites the conditions at FCI Bennettsville, his rehabilitation efforts, that he has served more than ten years of his sentence, and his release plan. See [D.E. 87] 1; [D.E. 90] 1–3, 12–15; [D.E. 90-3, 90-4].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Faulkner states that he has hypertension and a history of hepatitis C, he has not demonstrated that he is not going to recover from these conditions or that they cannot be treated while Faulkner serves his sentence. Accordingly, reducing Faulkner's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Faulkner's medical conditions, his rehabilitation efforts, that he has served over ten years of his sentence, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

6

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Faulkner's sentence. See High, 2021 WL 1823289, at *4–7; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Faulkner engaged in extremely serious, violent criminal conduct between April and June 2009. See PSR ¶¶ 5–10. On April 21, 2019, Faulkner robbed Your Convenience Store in Sampson County, North Carolina by pointing a gun at the store clerk, demanding money, and taking $1,030.91. See id. On May 9, 2020, Faulkner robbed Sanderson's Kwik Stop by approaching the store's cashier, producing a handgun, demanding money, and taking $354.57. See id. On June 14, 2009, Faulkner again robbed Sanderson's Kwik Stop. Faulkner grabbed the store clerk by the collar, pointed a handgun at him, demanded money, and took $6,600.00. See id. A source later identified Faulkner to law enforcement officers who took him into custody. Officers then executed a search of Faulkner's residence. See id. During the search, officers recovered an unloaded .38 caliber handgun. See id. Faulkner ultimately was accountable for the armed robbery of three businesses resulting in a total loss of $7,985.48. See id. ¶ 10.

Faulkner also is an extremely violent recidivist with convictions for robbery with a dangerous weapon, assault, robbery with a deadly weapon, battery, malicious destruction of property value less than $300, handgun on person, attempt by drive to elude police in official police vehicle by failing to stop, attempt to elude policy by fleeing on foot, controlled dangerous substance: possession–not marijuana (four counts), controlled dangerous substance: possession of drug paraphernalia, controlled dangerous substance: possession with intent to manufacture/distribute/dispense (three

7

counts), assault on a female, and resisting a public officer. See id. ¶¶ 15–28. Faulkner also has performed poorly on supervision. See id. ¶¶ 15, 24. Nonetheless, Faulkner has taken some positive steps while incarcerated on his federal sentence. See, e.g., [D.E. 90] 15; [D.E. 90-4] 1–21.

The court has considered Faulkner's exposure to COVID-19, his medical conditions, his rehabilitation efforts, that he has served over ten years of his sentence, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 2021 WL 1823289, at *4–7; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Faulkner's arguments, the government's persuasive response, and the need to punish Faulkner for his serious criminal behavior, to incapacitate Faulkner, to promote respect for the law, to deter others, and to protect society, the court declines to grant Faulkner's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 2021 WL 1823289, at *4–7; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Faulkner's request for home confinement, Faulkner seeks relief under the CARES Act. See [D.E. 90] 16. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). Thus, the court dismisses Faulkner's request for home confinement.

8

II.

In sum, the court DENIES Faulkner's motion for compassionate release [D.E. 87] and DISMISSES Faulkner's request for home confinement.

SO ORDERED. This 20 day of May 2021.

JAMES C. DEVER III
United States District Judge